**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**TIMOTHY CURLEY,**

                **Plaintiff,**　　　　　　　No. 07-cv-370
　　　　　　　　　　　　　　　　　　　　　　　(GLS-DRH)
       **v.**

**VIRGINIA PHILO AND THE BOARD OF
EDUCATION OF THE SOUTH GLENS
FALLS SCHOOL DISTRICT,**

                **Defendants.**
_____

**APPEARANCES:**

FOR PLAINTIFF:
BRENNAN, WHITE LAW FIRM　　　　　DANIEL J. STEWART, ESQ.
163 Haviland Road
Queensbury, NY 12804

FOR DEFENDANTS:
RYAN, SMALLACOMBE LAW FIRM　　　CLAUDIA A. RYAN, ESQ.
100 State Street, Suite 800　　　　　　　　JOHN F. MOORE, ESQ.
Albany, NY 12207

**Gary L. Sharpe
U.S. District Judge**

## DECISION AND ORDER

    Currently before the court is defendants Virginia Philo ("Philo") and

The Board of Education of The South Glens Falls School District's (the "School District") motion for summary judgment (Dkt. No. 30), as well as plaintiff Timothy Curley's ("Curley") cross-motion for partial summary judgment (Dkt. No. 38). Following review of the briefs in support thereof and the record on the matter, the court grants the School District's motion and denies Curley's motion.

## BACKGROUND

The following relevant facts are undisputed. Curley is a resident of South Glens Falls, New York, and Philo is a member of the Board of Education of the School District. (*See* Plaintiff's Statement of Material Facts, Dkt. No. 38-32 at ¶¶1-3.) In November 2006, at a school banquet, a slide show was presented that Curley found to be inappropriate. (*Id.* at ¶ 4.) In particular, Curley found one slide used in the presentation to be sexually suggestive and another racially suggestive. (*Id.* at ¶¶ 5-7.) Curley notified the high school principal and the matter was referred to the Superintendent's office. (*Id.* at ¶¶8-9.) In addition, the possible replacement for the high school girls' soccer coach was also another issue of concern for Curley. (*Id.* at ¶¶ 10-11.)

On February 12, 2007, the Board of Education held a meeting. (*Id.* at

2

¶ 12.) At this meeting, individuals and students spoke on behalf of the current girls' soccer coach and Curley spoke of his concerns regarding the school banquet slide show. (*Id.* at ¶¶ 18-20.) At the meeting, however, no action was taken regarding either the coach or the banquet slide show. (*Id.* at ¶ 21.) On March 19, 2007, at a Board meeting, Philo delivered and read a letter to Curley. This letter stated:

> We are the attorneys for the South Glens Falls Central School District. Over the last several weeks you have been engaging in extensive and improper communications with employees and officers of the school district. This activity is disrupting the school community. It must cease immediately. Therefore, any further communications in regard to the district should be directed to me.

(*Id.* at ¶¶ 24 and 28.) Superintendent McCarthy stated the improper communications had to do with Curley's comments in the February 2007 meeting and the fact that Curley had sent comments to the media. (*See* Ex. F at 36-37, Dkt. No. 30-9.)

At the beginning of the March 2007 meeting, Philo read a statement which restricted comments on the issues of the school banquet slide show and the girls' soccer coach. (*See* Defendants' statements of Material Facts at 106, Dkt. No. 30-21.) When Curley attempted to speak about those issues at the meeting, Curley was advised those issues were not for

3

discussion and, eventually, he was escorted out the meeting.  (*See* Plaintiff's Statement of Material Facts, Dkt. No. 38-32 at ¶¶ 47-48.)

Curley brought this action, pursuant to 42 U.S.C. § 1983, against Philo and the School District claiming they violated his First Amendment rights to free speech.  Philo and the School District moved for summary judgment and Curley responded with a cross-motion for partial summary judgment.

## **DISCUSSION**

Summary judgment may be granted only if "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  To defeat a summary judgment motion, the nonmoving party must show sufficient evidence to create a genuine issue of material fact.  *Wills v. Amerada Hess Corp.*, 379 F.3d 32, 41 (2d Cir. 2004).  However, the court must draw all facts and inferences in the light most favorable to the plaintiff.  *LaTrieste Rest. and Cabaret Inc. v. Vill. of Port Chester,* 40 F.3d 587, 589 (2d Cir. 1994).

In determining whether a state actor violated a plaintiff's First Amendment free speech rights, the court considers: (1) whether the plaintiff's speech is protected by the First Amendment; (2) the nature of the

4

forum; and (3) whether defendant's justifications for limiting the plaintiff's speech satisfy the requisite standard.  *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.,* 473 U.S. 788, 797 (1985).

Here, the parties do not dispute that Curley meets the first prong of the test, i.e., that his speech was protected.  Rather, the parties dispute the nature of the forum.  Courts "classify fora for expression in four categories that, correspondingly, fall along a spectrum of constitutional protection." *Peck ex rel. Peck v. Baldwinsville Cent. Sch. Dist.,* 426 F.3d 617, 625-26 (2d Cir. 2005).  "The first, and most speech-protective forum is the traditional public forum."  *Id.* (quotations omitted)  "This category is comprised of those places-streets, parks, and the like- which have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions."  *Id.*  "In these fora, [c]ontent-based restrictions will be upheld only if they are necessary to serve a compelling state interest and are narrowly drawn to achieve that end."  *Id.*

"The designated public forum and its subset, the limited public forum, fall next along the spectrum."  *Id.*  "A designated public forum is a place not

5

traditionally open to public assembly and debate- a public school, for example- that the government has taken affirmative steps to open for general public discourse." *Id.* "Speech in a designated public forum is entitled to the same constitutional protection as that extended to expression in a traditional public forum, so long as the state continues to designate the forum for such use." *Id.* "A limited public forum, instead, is created when the State opens a non-public forum but limits the expressive activity to certain kinds of speakers or to the discussion of certain subjects." *Id.* "In limited public fora, the government may make reasonable, viewpoint-neutral rules governing the content speech allowed. *Id.*

"Garnering the lowest level of scrutiny along the forum analysis spectrum is the non-public forum, which is neither traditionally open to public expression nor designated for such expression by the State." *Id.* "Restrictions on speech in a nonpublic forum need only be reasonable and viewpoint neutral." *Id.*

Here, the parties do not dispute the forum was neither a traditional public forum nor a non-public forum. The parties' dispute is whether it was

6

a designated public forum or limited public forum.[1]  The court determines that Second Circuit case law supports a finding that, in this case, the Board meeting in question was a limited public forum.  *Bronx Household of Faith v. Board of Educ. of City of New York,* 492 F.3d 89, 98 n.3 (2d Cir. 2007) ("[W]e had repeatedly found that New York State, in its statute authorizing the use of school facilities, intended to create only a limited public forum.") (citations omitted).  In one paragraph, Curley states the meeting was a designated open forum and offers two affidavits to support his argument.  One affidavit is from Lloyd T. Streeter ("Streeter"), but Streeter's own deposition contradicts Curley's claim.  In his deposition, Streeter clearly indicates that speech restrictions had occurred at another Board meeting in 2006.  (*See* Ex. H at pp. 8-9, Dkt. No. 30-11.)  The meeting in question in this case occurred at a limited public forum.

Under the limited public forum analysis, property remains a nonpublic forum as to all unspecified uses, and exclusion of uses-even if based upon subject matter or the speaker's identity-need only be reasonable and

---

[1] "[T]he character of a forum is defined by its uses and the uses to which it is put change over time. . . . Therefore, . . .  the character of the forum . . . must be based on a factual inquiry into the forum's current uses, not those of a decade ago." *Bronx Household,* 492 F.3d 128 (Walker J., Dissenting) (citing *Paulsen,* 925 F.2d at 69 and *Grayned v. City of Rockford,* 408 U.S. 104, 116 (1972)); *see also Musso v. Hourigan,* 836 F.2d 736, 742 (2d Cir. 1988).

7

viewpoint-neutral to pass constitutional muster. *Deeper Life Christian Fellowship, Inc. v. Board of Educ. of the City of New York,* 852 F.2d 676, 679-80 (2d Cir. 1988). The Supreme Court noted:

> Implicit in the concept of the nonpublic forum is the right to make distinctions in access on the basis of subject matter and speaker identity. These distinctions may be impermissible in a public forum but are inherent and inescapable in the process of a nonpublic forum to activities compatible with the intended purposes of the property.

*Perry Educ. Ass'n. v. Perry Local Educators' Ass'n.,* 460 U.S. at 49.

Here, at the beginning of the meeting, Philo read a statement which, in relevant part, states:

> With each moment spent on one area such as soccer, we shortchange those students and citizens who have no interest in soccer. The students participating in other extracurricular activities or areas of the school have every right to as much of our attention and time as that which we have given to soccer. . . . I will not recognize <u>anyone</u> who: 1. Wishes to make personal attacks on board members[;] 2. Is here to discuss the Soccer DVD, as that will be addressed through a policy that the board will consider adopting this evening[;] 3. Or is here to discuss the Girls' Varsity Soccer coaching position because we are well aware and understand your opinions.

(*See* Dkt. No. 30-21 at ¶119. ) Considering this statement and the law previously mentioned, the court determines the School District had the right to exclude the topics of the slide show and girls' soccer coach from the

8

forum regardless of the particular stand a speaker may have and, that in doing so, there was no viewpoint discrimination on its part. Under the School District's restriction, all viewpoints regarding those subjects received the same treatment. *See Paulsen v. County of Nassau,* 925 F.2d 65, 69 (2d Cir. 1991) ("Though the state may limit access to certain speakers or subjects, [limitations] must be applied even handedly to all similarly situated parties.") (citing *Perry,* 460 U.S. at 48). In addition, the record indicates the Board heard Curley on that same issue on several instances– at a previous meeting and through letters and e-mails– thus, the School District was fully aware of his concerns and its decision not to cover that topic again at a subsequent meeting was reasonable.[2] Here, the School Board's restriction of Curley's speech did not violate the First Amendment.[3]

      Having made this determination, it is unnecessary to conduct any

---

[2]The court notes Curley claims the School District prevented him from speaking again in April 2007. However, interestingly, Curley never claimed this in his Response to Demand for Interrogatories. (*See* Ex. C, Dkt. No. 30-5, response to interrogatory 4.)

[3]Because the court: (1) determines the School District's motion should be granted on these bases and (2) "has broad discretion to determine whether to overlook a party's failure to comply with local rules[,]" *Holtz v. Rockefeller & Co., Inc.,* 258 F.3d 62, 73 (2d Cir. 2001), the court rejects the School District's request to penalize Curley for failing to comply with Local Rule 7.1(d)(3).

9

inquiries regarding Philo's defense of qualified immunity.[4]  *See Saucier v. Katz,* 533 U.S. 194, 201 (2001) ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.").[5]

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that the defendants' motion for summary judgment (Dkt. No. 30) is **GRANTED** and that Curley's cross-motion for partial summary judgment (Dkt. No. 38) is **DENIED**, and this case is dismissed; and it is further

**ORDERED** that the Clerk enter judgment and provide copies of this Decision and Order to the parties.

**IT IS SO ORDERED.**

Albany, New York
Dated: July 14, 2009

*[signature]*
United States District Court Judge

---

[4] Nor is it necessary to discuss the merits of the School District's other claims seeking dismissal, including the claim that Philo is entitled to dismissal under the Volunteer Protection Act of 1997, 42 U.S.C. § 14501.

[5] In the recent decision of *Pearson v. Callahan*, 129 S.Ct. 808, 818 (2009), the Supreme Court does not prevent courts from following *Saucier,* it simply gives the courts discretion to decide whether the procedure in that case is useful to the courts.